BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE JAMES B. LINDHOLM, JR., COUNTY COUNSEL, COUNTY OF SAN LUIS OBISPO, has requested an opinion on the following question:
May a community establish its maximum number of housing units by income category that can be constructed, rehabilitated, and conserved over the next five-year period below the number of housing units that would meet the community's goal of achieving its share of the regional housing needs established pursuant to the Planning and Zoning Law if the community finds that federal and state funds are unavailable for its housing programs?
 CONCLUSION
A community may establish its maximum number of housing units by income category that can be constructed, rehabilitated, and conserved over the next five-year period below the number of housing units that would meet the community's goal of achieving its share of the regional housing needs established pursuant to the Planning and Zoning Law if the community finds that its available resources in the aggregate, including but not limited to federal and state funds for its housing programs, its own local funds, tax or density credits, and other affordable housing programs, are insufficient to meet those needs.
 ANALYSIS
Under the Planning and Zoning Law (Gov. Code, §§ 65000-66499.58),[1] a "community"[2] has the "responsibility to . . . make adequate provision for the housing needs of all economic segments of the community." (§ 65580, subd. (d).) This is accomplished through the adoption, amendment, and implementation of a general plan for the community (§§ 65300-65302), including a mandatory housing element (§§ 65580-65589.8). As part of this process, the community is directed to "establish the maximum number of housing units by income category that can be constructed, rehabilitated, and conserved over a five-year time period." (§ 65583, subd. (b)(2).) The question presented for analysis concerns the circumstances under which this "maximum number of housing units" may be set below the number that represents the community's total housing needs as established under the Planning and Zoning Law. We conclude that the availability of federal and state housing funds may be considered as one factor among many, including the availability of the community's own local funds, tax or density credits, and other affordable housing programs, in setting this maximum number below what would meet the community's total housing needs, including its share of the regional housing needs.
A community's general plan represents a comprehensive, long-term guide for its physical development. (§ 65300.) It contains an "integrated, internally consistent and compatible statement" of the community's policies (§ 65300.5), including "objectives, principles, standards and plan proposals" for all mandatory elements (§ 65302). (See Federation of Hillside Canyon Assns. v. City of Los Angeles (2004)126 Cal.App.4th 1180, 1194-1195; Hoffmaster v. City of San Diego (1997) 55 Cal.App.4th 1098, 1106; Hernandez v. City of Encinitas (1994) 28 Cal.App.4th 1048, 1070; Black Property Owners Assn. v. City of Berkeley (1994) 22 Cal.App.4th 974, 978, 985; Committee for Responsible Planning v. City of Indian Wells (1989) 209 Cal.App.3d 1005,1012-1013; Buena Vista Gardens Apartments Assn. v. City of San Diego Planning Dept. (1985) 175 Cal.App.3d 289, 294-295.) "The general plan `is, in short, a constitution for all further development within the city.' [Citations]." (Friends of "B" Street v. City of Hayward (1980)106 Cal.App.3d 988, 997; see Citizens of Goleta Valley v. Board of Supervisors (1990) 52 Cal.3d 553, 571; Lesher Communications, Inc. v. City of Walnut Creek (1990) 52 Cal.3d 531, 540.)
As a mandatory element of a community's general plan, the housing element must comply with strict state requirements (§§ 65580-65589.8). (See Hoffmaster v. City of San Diego, supra, 55 Cal.App.4th at pp. 1105-1106; Hernandez v. City of Encinitas, supra, 28 Cal.App.4th at p. 1058; Black Property Owners Assn. v. City of Berkeley, supra, 22 Cal.App.4th at p. 985; Northwood Homes, Inc. v. Town of Moraga (1989)216 Cal.App.3d 1197, 1201; Committee for Responsible Planning v. City of Indian Wells, supra, 209 Cal.App.3d at pp. 1012-1013; Buena Vista Gardens Apartments Assn. v. City of San Diego Planning Dept., supra, 175 Cal.App.3d at p. 295.) A community is generally required to update its housing element every five years. (§ 65588; see Hoffmaster v. City of San Diego, supra, 55 Cal.App.4th at p. 1103, fn. 2; Black Property Owners Assn. v. City of Berkeley, supra, at p. 978.)
 The principal statute requiring our interpretation is section 65583, which identifies the requisite components of a community's housing element. Section 65583 states in part: "The housing element shall consist of an identification and analysis of existing and projected housing needs and a statement of goals, policies, quantified objectives, financial resources, and scheduled programs for the preservation, improvement, and development of housing. The housing element shall identify adequate sites for housing, including rental housing, factory-built housing, and mobilehomes, and shall make adequate provision for the existing and projected needs of all economic segments of the community. The element shall contain all of the following:
 "(a) An assessment of housing needs and an inventory of resources and constraints relevant to the meeting of these needs. The assessment and inventory shall include the following:
 "(1) An analysis of population and employment trends and documentation of projections and a quantification of the locality's existing and projected housing needs for all income levels. These existing and projected needs shall include the locality's share of the regional housing need in accordance with Section 65584.
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(8) An analysis of existing assisted housing developments that are eligible to change from low-income housing uses during the next 10 years due to termination of subsidy contracts, mortgage prepayment, or expiration of restrictions on use. `Assisted housing developments,' for the purpose of this section, shall mean multifamily rental housing that receives governmental assistance under federal programs listed in subdivision (a) of Section 65863.10, state and local multifamily revenue bond programs, local redevelopment programs, the federal Community Development Block Grant Program, or local in-lieu fees. `Assisted housing developments' shall also include multifamily rental units that were developed pursuant to a local inclusionary housing program or used to qualify for a density bonus pursuant to Section 65916.
 "(A) The analysis shall include a listing of each development by project name and address, the type of governmental assistance received, the earliest possible date of change from low-income use and the total number of elderly and nonelderly units that could be lost from the locality's low-income housing stock in each year during the 10-year period. For purposes of state and federally funded projects, the analysis required by this subparagraph need only contain information available on a statewide basis.
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(D) The analysis shall identify and consider the use of all federal, state, and local financing and subsidy programs which can be used to preserve, for lower income households, the assisted housing developments, identified in this paragraph, including, but not limited to, federal Community Development Block Grant Program funds, tax increment funds received by a redevelopment agency of the community, and administrative fees received by a housing authority operating within the community. In considering the use of these financing and subsidy programs, the analysis shall identify the amounts of funds under each available program which have not been legally obligated for other purposes and which could be available for use in preserving assisted housing developments.
 "(b)(1) A statement of the community's goals, quantified objectives, and policies relative to the maintenance, preservation, improvement and development of housing.
 "(2) It is recognized that the total housing needs identified pursuant to subdivision (a) may exceed available resources and the community's ability to satisfy this need within the content of the general plan requirements outlined in Article 5 (commencing with Section 65300). Under these circumstances, the quantified objectives need not be identical to the total housing needs. The quantified objectives shall establish the maximum number of housing units by income category that can be constructed, rehabilitated, and conserved over a five-year time period.
 "(c) A program which sets forth a five-year schedule of actions the local government is undertaking or intends to undertake to implement the policies and achieve the goals and objectives of the housing element through the administration of land use and development controls, provision of regulatory concessions and incentives, and the utilization of appropriate federal and state financing and subsidy programs when available and the utilization of moneys in a low- and moderate-income housing fund of an agency if the locality has established a redevelopment project area pursuant to the Community Redevelopment Law In order to make adequate provision for the housing needs of all economic segments of the community, the program shall do all of the following:
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(6)(A) Preserve for lower income households the assisted housing developments identified pursuant to paragraph (8) of subdivision (a). The program for preservation of the assisted housing developments shall utilize, to the extent necessary, all available federal, state and local financing and subsidy programs identified in paragraph (8) of subdivision (a), except where a community has other urgent needs for which alternative funding sources are not available. The program may include strategies that involve local regulation and technical assistance.
". . . . . . . . . . . . . . . . . . . . . . . . . . . ."[3]
Subdivision (a) of section 65583 requires that a housing element include "[a]n assessment of housing needs" that quantifies "the locality's existing and projected housing needs for all income levels," including "the locality's share of the regional housing need in accordance with Section 65584." (See Hoffmaster v. City of San Diego, supra, 55 Cal.App.4th at pp. 1105-1106; Hernandez v. City of Encinitas, supra, 28 Cal.App.4th at p. 1060; Northwood Homes, Inc. v. Town of Moraga, 216 Cal.App.3d at p. 1201; Buena Vista Gardens Apartments Assn. v. City of San Diego Planning Dept., supra,175 Cal.App.3d at p. 295.) Under section 65584, a community's share of the regional housing needs is determined by a council of governments[4] based upon a region's share of the statewide housing need as established by the Department of Housing and Community Development. (See Hernandez v. City of Encinitas, supra, 28 Cal.App.4th at pp. 1060-1061.)
In contrast to subdivision (a) of section 66583, we find that subdivision (b)(2) of the statute authorizes a community to determine its "quantified objectives," which sets "the maximum number of housing units by income category that can be constructed, rehabilitated, and conserved over a five-year time period." This maximum number of housing units "need not be identical to the total housing needs," identified in subdivision (a) of the statute, if the community's total housing needs, including its share of the regional housing needs, "exceed available resources and the community's ability to satisfy this need within the content of the general plan requirements " (§ 65583, subd. (b)(2); see Hoffmaster v. City of San Diego, supra, 55 Cal.App.4th at pp. 1107-1109; Hernandez v. City of Encinitas, supra, 28 Cal.App.4th at pp. 1061, 1066; Buena Vista Gardens Apartments Assn. v. City of San Diego Planning Dept., supra,175 Cal.App.3d at p. 305.)
Accordingly, the legal issue to be resolved is whether federal and state housing funds constitute part of a community's "resources" for purposes of setting the community's quantified objectives. We believe that such funds constitute some of the resources of a community. Subdivision (c) of section 65583 refers to a community's "utilization of appropriate federal and state financing and subsidy programs when available" to achieve a community's "goals and objectives of the housing element." Numerous other references are made in section 65583 to the possible availability of federal and state grant funds for housing projects (§ 65583, subds. (a)(8)(A), (D), (c)(6)(A)), and related statutes also so reference federal and state housing programs (see, e.g., § 65863.10, subd. (a)(3)). (See Hoffmaster v. City of San Diego, supra, 55 Cal.App.4th at p. 1116.)
It is readily apparent from these statutory provisions that federal and state housing funds must be considered among a community's "resources" for purposes of establishing quantified objectives under the terms of section 65583, subdivision (b)(2). When such resources, including local funds, tax or density credits, and affordable housing programs, are not available, the maximum number of housing units by income category that can be constructed, rehabilitated, and conserved over the next five-year period may be set at a lower number than the number which would meet the community's total housing needs, including its share of the regional housing needs.
We note, however, that if a lack of federal and state funds is found by a community to be one of the circumstances causing the community to set its quantified objectives below the number representing its total housing needs (§ 65583, subd. (b)(2)), the validity of such determination may be challenged in court by any interested party pursuant to the terms of section 65587. (See Hoffmaster v. City of San Diego, supra, 55 Cal.App.4th at pp. 1105-1106, 1109-1110.) Moreover, it would not be appropriate to look solely at the unavailability of federal and state housing funds without determining whether other resources were available to meet the community's share of the regional housing needs. (See, id. at p. 1110, fn. 8.)
We conclude that a community may establish its maximum number of housing units by income category that can be constructed, rehabilitated, and conserved over the next five-year period below the number of housing units that would meet the community's goal of achieving its share of the regional housing needs established pursuant to the Planning and
Zoning Law if the community finds that its available resources in the aggregate, including but not limited to federal and state funds for its housing programs, its own local funds, tax or density credits, and other affordable housing programs, are insufficient to meet those needs.
[1] All references hereafter to the Government Code are by section number only.
[2] A "community" is a city or a county. (§ 65582, subd. (a).)
[3] Subdivision (a)(3) of section 65863.10 lists the following federal programs:
 "(A) New construction, substantial rehabilitation, moderate rehabilitation, property disposition, and loan management set-aside programs, or any other program providing project-based assistance, under Section 8 of the United States Housing Act of 1937, as amended (42 U.S.C. Sec. 1437f).
"(B) The following federal programs:
 "(i) The Below-Market-Interest-Rate Program under Section 221(d)(3) of the National Housing Act (U.S.C. Sec. 17151(d)(3) and (5)).
"(ii) Section 236 of the National Housing Act ( 12 U.S.C. Sec. 175z-1).
"(iii) Section 202 of the Housing Act of 1959 (12 U.S.C. Sec. 1701q).
 "(C) Programs for rent supplement assistance under Section 101 of the Housing and Urban Development Act of 1965, as amended (12 U.S.C. Sec. 1701s).
 "(D) Programs under Section 515 of the Housing Act of 1949, as amended (42 U.S.C. Sec. 1485).
"(E) Section 42 of the Internal Revenue Code."
[4] A "council of governments" is a single or multi-county council created by a joint powers agreement. (§ 65582, subd. (b).) For cities and counties without a council of governments, the Department of Housing and Urban Development makes the necessary determinations. (§ 65584, subd. (b).)